Nancy Colbert
142 Pennsylvania Avenue
Phoenixville, PA 19460
610-917-1116

## DISTRICT COURT OF THE UNITED STATES
for the
EASTERN DISTRICT OF PENNSYLVANIA

Nancy Colbert, Petitioner            Case No.

v.

Mike Innocenzo, CEO, PECO, Respondent 1
and
Gladys Brown Dutrieuille, Chairwoman, PA PUC, Respondent 2

Including all respective PECO and PENNSYLVANIA PUBLIC UTILITY COMMISSION Agents

### VERIFIED PETITION FOR EMERGENCY EX PARTE INJUNCTIVE RELIEF

Petitioner petitions this honorable court to issue an injunction and in support therefore states:

### JURISDICTIONAL ALLEGATIONS

1. This is an action for an injunction.
2. Petitioner resides in Chester County, Pennsylvania.
3. The harm to be enjoined is threatened in Chester County.
4. Respondent 1 works at PECO in Philadelphia County.
5. Respondent 2, who works at the Pennsylvania Public Utility Commission (PA PUC) in Dauphin County, oversees Respondent 1.
6. This Honorable Court has jurisdiction.

### FACTUAL ALLEGATIONS

7. Petitioner has personal knowledge that Respondents have a well-formed plan to cause Petitioner irreparable harms including but not limited to:

    a. Depriving rights secured by our national Constitution's *Fourth, Fifth, and Fourteenth Amendments* and upheld by *18 USC § 241 and §242* and by *case law,* involving the PA PUC and the Pennsylvania Supreme Court;
    b. Depriving rights secured by the *Pennsylvania Constitution: Article 1 §1, §8, §26, and Article 10 §2*
    c. Violating **Federal Trades Commission** law on monopolies since monopolistic power companies have tried to invert the customer/provider relationship so that corporations rather than the public drive market forces unlawfully.
    d. Violating the **Federal Power Act**
    e. Violating *18 U.S. Code § 1038 - False information and hoaxes;*
    f. Violating *18 Pa.C.S.A. Crimes and Offenses § 4107. Deceptive or fraudulent business practices;*

1

    g. *Violating 18 Pa. C.S.A. § 5703 Interception, disclosure or use of wire, electronic or oral communications*

    h. Violating *Pennsylvania Title 18 Chapter 35 - Burglary and Other Criminal Intrusion §3503 Criminal trespass*

    i. Violating *Pennsylvania Code Title 52 Public Utilities Chapter 57 Subchapter O Advanced Meter Deployment § 57.251. Purpose; § 57.255. EDC responsibilities regarding advanced metering; § 57.256. EDC responsibilities regarding network deployment; PA Title 52 § 57.257 (b) Disputes concerning advanced metering; PA Title 52 § 57.259. Customer education on advanced metering.*

    j. Violating **Act 129** a.k.a. **PA Title 66 § 2807 (f) (3) (7).**

    k. Violating an established contract with Respondents since March 2018 who both failed three times to address Petitioner's conditional acceptance of the trespassing technology smart meter (hereafter, "**TT meter**") in response to Respondents offer to change the original conditions.

8. For the record, Petitioner has called PECO on multiple occasions for billing harassments since:
   a. seeing that the October monthly payment had not cleared her bank account by deadline, also reminded the PECO agent that Petitioner had to call PECO on November 7 because Petitioner had not received an October billing, and also had acquired from that agent the mailing address for sending payment due November 15.
   b. Petitioner followed Pennsylvania Public Utility Commission (PUC) Guidelines as a responsible customer: **Remember, to avoid having your utility service shut off, you have the responsibility to contact the utilitycompany immediately with any billing dispute or payment problem.**
   https://www.amwater.com/files/Revised%20Rights%20and%20Responsibilities%20June%208th.pdf
   c. Petitioner had sent payment by mail on November 8 at the Phoenixville Post Office, along with a car payment to a nearby Philadelphia credit union which debited on November 15.
   d. Peco agent (Val) faulted either the postal system or that Petitioner did not pay.
   e. Petitioner offered proof of payment through duplicate check copy, but agent did not accept.
   f. Petitioner reminded PECO agent that PECO had delayed sending bills during the summer months and sent one with incorrect dates, such that Petitioner had to combine two months payments into one to correct the error, and that Petitioner has always paid PECO monthly upon receipt of billing since the account began in 2003.
   g. On November 18, 2022, PECO's automated system and agent (Paul) still reported the October payment was not processed, and again on November 23, 2022, so Petitioner sent an epayment through her bank account on November 25, **giving PECO two October payments**.

9. For the record, Petitioner has followed the Pennsylvania PUC Guidelines each month as a responsible customer:
   **Supplying Your Own Meter Readings: If you would like all your bills to be based on actual meter readings instead of estimates, you may supply the utility with readings during estimated billing periods. Some utilities let you give them your meter reading by telephone or through their website. You may also ask for meter reading cards from the utility and return them by the date listed on the card. Contact your utility for more details. The utility will also provide you with meter reading instructions.**
   https://www.amwater.com/files/Revised%20Rights%20and%20Responsibilities%20June%208th.pdf

10. On November 14, 2022, Respondent 1 issued notice to shut off Petitioner's electricity on November 28, 2022, claiming "you did not give us access for us to inspect our meter107303501."

11. Petitioner received notice by mail on November 16, 2022, three days after the ten-day notice went into effect on November 14, 2022, and in which the cut-off period is unreasonably shortened by

2

the Thanksgiving holiday and weekend lack of business hours, referencing **PA Title 66 § 1503 Discontinuance of service.**

12. Respondent violated **PA Title 66 § 1503 (b) Personal contact before service discontinued** since a three-day notice would occur during holiday and non-business hours.
13. This notice was the first and only notice since March 2018 after Respondent failed to reply to Petitioner's conditional acceptance counteroffer to Respondents from PECO's November 2015 offer to change the contract; Petitioner never failed to allow PECO to inspect its meter which is physically accessible <u>upon notice of scheduled arrival to Petitioner and her property</u>.
14. On November 17, 2022, Petitioner called 1-800-494-4000 "to provide access to our meter" as instructed and was told by agent (Sharnell) <u>instead</u> to schedule the installation of its TT meter, or be shut off service on November 28, 2022.
15. Petitioner, who has knowledge of the Supreme Law of the Land, including federal and state laws, as well as myriad state nationwide, and international reports of harms and damages from TT meter which reasonably raises the Precautionary Principle, had registered nonconsent to PECO beginning in June 2014 when unannounced deployment began in nearby neighborhoods.
16. On November 16 and 21, 2022, Petitioner reminded PECO agents (Kim, Guinevere) that PECO has no consent to trespass with its TT meter as confirmed by the March 2018 conditional acceptance counteroffer for Respondents' compliance to **PA Title 52 § 57.259. Customer education on advanced metering and § 57.256. EDC responsibilities regarding network deployment.**
17. On November 21, 2022, Petitioner spoke to PECO agent (Guinevere) who confirmed shut-off unless Petitioner scheduled an appointment for TT meter installation.
18. Petitioner under duress scheduled December 5, 2022 without consent and confirmed she would register a complaint with the PA PUC after the agent provided the contact information: 800-692-7380.
19. Petitioner, speaking to PA PUC agent (Amanda), received assurance that the electricity would not be shut off on November 28, 2022, that PECO's notice of shut-off would be addressed, and that the informal administrative process would take at least several weeks to complete.
20. On November 21, 2022 in the late afternoon, PECO agent (Irida) left a voicemail that she received notice of Petitioner's informal complaint, that Petitioner could schedule "whenever you want the appointment....whenever you want it" besides December 5, and asked if Petitioner wanted a less-transmitting TT meter.
21. On November 21, 2022, Petitioner also filed a formal complaint with the PA PUC to demand remedy for the TT meter according to the Rule of Law; the certified mail complaint reached the Harrisburg office on November 23, 2022 at 11:01 AM.
22. On November 23, 2022 in the late afternoon, Respondent 1, through its agent (Irida) telephoned to communicate that PECO would install the TT meter on Saturday, November 26, 2022 to which Petitioner, under significant duress, repeatedly forbid trespass on property that day.

23. PECO agent (Irida) continued the threat that shut-off is imminent ("we're coming after you"); that the informal and formal complaints have already been decided so that aborting and denying of the statutory process was now "lawful" despite violation of **PA Code Title 52 § 57.257. Disputes concerning advanced metering**; and that Respondent 1 promises to shut off electricity if deployment forced upon Petitioner, Petitioner's family, and property with a TT device is not accomplished.

3

24. Under threat, duress, and coercion, Petitioner scheduled TT installation to prevent shut-off, but changed the date to December 12 despite prolonged and repeated resistance by the agent who two days earlier had assured "whenever you want to schedule".
25. **Petitioner and family has already suffered from the lack of the Rule of Law, and will continue to suffer irreparable and multiple harms to all areas of life, liberty, and property from loss of electricity, especially during the coming winter months when Petitioner, family and pipes would freeze, leading to potentially deadly consequences, and especially since electricity is necessary for survival in all arenas of modern life;**
26. **In the absence of preliminary relief, the threatened harm would cause petitionary injuries for which money judgment alone is insufficient.**
27. **An action for money damages alone is insufficient to restore Petitioner to status quo ante.**
28. Petitioner cannot secure electricity from any other providers which only offer TT meters.
29. **The balance of equities tips in Petitioner's favor because:**
    a. None of the PA PUC rules for when utility service can be shut off apply to Petitioner who is a responsible customer; PECO would have to provide proof that Petitioner failed to pay (October payment check "lost" somehow but paid twice), tampered with the meter, provided false statement to obtain service, refused to allow utility employees to read the meter or inspect it (does not include "deployment" of a TT meter), or violated any PA PUC rules which may cause harm to person or equipment which are all nonexistent.
    b. Federal law recognizes a right to public utility service that is often necessary for basic survival.
    c. **66 Pa. C.S. § 1502** *Discrimination in service* states: No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to service, either as between localities or as between classes of service, but this section does not prohibit the establishment of reasonable classifications of service.
    d. As Ohio courts have defined, a "public service" is an entity that should provide "an essential good or service to the general public which has a legal right to demand or receive this good or service." Next, the entity must provide that good or service "generally and indiscriminately." Finally, the entity must have "an obligation to provide the good or service that cannot be arbitrarily or unreasonably withdrawn."
    e. Respondent 2 has allowed Respondent 1 to omit specific statutory requirements, thereby overstepping her legislatively-delegated authority.
    f. Respondent 1's employee in charge of TT deployment (for an unknown period) is the son of the late Pennsylvania Senator Robert Godshall, Chairman who prevented many legislative efforts from proceeding to passage, in order for the public to address Act 129 issues.
    g. Respondent 1, who is one of the top ten manufacturers of TT meters forcing one on Petitioner, has claimed in the beginning, along with Respondent 2, that PECO TT meter is for an "energy efficiency and conservation program," that will save Petitioner money and provide many customer conveniences, despite that Respondents:

        1. uses surveillance to determine specific usages and charge "peak prices" when home customers need electricity most as if to threaten survival needs;
        2. transfers onto customers their business costs of operating their electricity-guzzling TT meter with low shelf life, unlike analog meters;
        3. uses the technology to trespass people's homes in order to sell private usage data" for corporate profit without customer consent as statutorily-required;
        4. continues to force substantial technological vulnerabilities (i.e. switch mode power supply; no surge protection) of TT meter harming its safety, security, effectiveness and

4

   durability that will cost consumers more harms and expenses which have included, but not limited to, significant risks to home electronic assets upon installations of TT meters;
   a. former CIA Director, James Woolsey, it is a *"really, really stupid grid"* See https://youtu.be/MAid1bS8t9U ;
   b. cyber security expert David Chalk *"There is not a power meter or device on the grid that is protected from hacking – if not already infected – with some kind of Trojan horse that can cause the grid to be shut down or completely annihilated."* See https://www.youtube.com/watch?v=WsccwnjFBUI
5. claims opt-out is cost-prohibitive after deploying its TT meters for many years on unsuspecting customers by arriving unannounced onto private property (numerous reports of damages too);
6. ignores the federal government's recognition of the "Havana Syndrome" (https://www.livescience.com/havana-syndrome-caused-microwave-energy-government-report.html) and thus fails to inform customers of potential disadvantages;
7. failed to meet varied statutory requirements of *PA Code Title 52*; Respondent 2, in collusion with Respondent 1, appears to have deliberately made legal determinations and acted outside the scope of the legislatively-delegated authority in their "deployment" of TT meters.
8. during appeal to overturn the Commonwealth Court ruling that TT meters were not lawfully obligatory, Respondents switched the agenda to TT meters being critical for the Internet of Things ("IoT") and 5G infrastructure instead, effectively disavowing responsibility for compliance with Act 129's asserted goal of promoting energy efficiency and conservation.
9. Suspicion of bait and switch practices arises also as Pennsylvania builds so much new natural-gas-fired power that produces much "carbon pollution," in the face of the "climate crisis" goal of reducing carbon emissions which is the same intention for reducing electric consumption.

30. **A substantial likelihood exists that Petitioner will prevail in this action, because facts made by discovery will reveal:**
    a. when circumstances show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard, a party may ask a court to issue, in lieu of a preliminary injunction, an **ex parte** temporary restraining order. **Camden-Clark Memorial Hosp. Corp. v. Turner, 212 W. Va. 752, 575 S.E.2d 362 (2002).**
    b. An injunction should be granted to preserve a clear right from a knowing, willful, wanton, or unprovoked wrong although the loss to the defendant will be greater than the injury that refusal of the injunction would cause the plaintiff. **Morgan v. Veach, 59 Cal. App. 2d 682, 139 P.2d 976 (2d Dist. 1943); Moyerman v. Glanzberg, 391 Pa. 387, 138 A.2d 681 (1958); Lind-say v. James, 188 Va. 646, 51 S.E.2d 326, 7 A.L.R.2d 597 (1949).**
    c. Petitioner has a clear right not to be harmed by actions violating the Supreme Law of the Land and the Rule of Law which then harms public interests at greater costs.
    d. It is unnecessary for a party seeking an injunction to allege irreparable injury if the threatened action is in direct violation of a prohibitory law. **Lahme v. University of Southwestern Louisiana, 692 So. 2d 541, 117 Ed. Law Rep. 1150 (La. Ct. App. 3d Cir. 1997), writ not considered, 693 So. 2d 788 (La. 1997).**
    e. Federal courts may enjoin bad-faith law enforcement tactics if federally guaranteed constitutional rights are involved, and an "irreparable injury" will result. **Spiegel v. City of Houston, 636 F.2d 997 (5th Cir. 1981); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992).**

    f. An injunction is available when a state attempts to enforce a statute or regulation that on its face irreconcilably conflicts with federal law. **Rice v. Norman Williams Co., 458 U.S. 654, 102 S. Ct. 3294, 73 L. Ed. 2d 1042 (1982); Bank One, Utah v. Guttau, 190 F.3d 844 (8th Cir. 1999).**

    g. The 11th Amendment permits suits for prospective injunctive relief against state officials acting with PECO in violation of federal law whose members swore oaths to the Constitutions. **Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004).**

    h. An injunction can also be granted if the administrative process does not comply with statutory requirements. **Alabama-Tombigbee Rivers Coalition v. Department of Interior, 26 F.3d 1103 (11th Cir. 1994) (rejected on other grounds by, Cargill, Inc. v. U.S., 173 F.3d 323 (5th Cir. 1999)).**

    i. **52 Pa. Code §57.251(a)** specifically states that it "**does not require the public to participate** in an advanced metering program." [emphasis added]

    j. **52 Pa. Code §57.255 EDC responsibilities regarding advanced metering: "(a) <u>Upon written request</u>** from both a customer and the EGS of that customer, the EDC shall make available and install for use a qualified advanced meter or meter-related device." [emphasis added]

    k. **Act 129 § 2807 (f)(2)** mirrors **52 Pa. Code §57.255** to concur and obey the Pennsylvania Constitution which places limits on the government and its agencies;

    l. the Pennsylvania Supreme Court ruling in August 2022 with limited subject matter jurisdiction from Respondent's appeal to "lawfully require" TT meters:
        1. omitted the <u>full</u>, plain-English wording of subsections of PA Title 66 in context;
        2. did not address the context of the corresponding administrative PA Code 52 Chapter 57 Subchapter O ;
        3. contained meanings that changed the scope and operation of the statute;
        4. demonstrated probable cause to a reasonable person of Respondents' unlawful bait-and-switch agenda;
        5. requires a constitutional challenge to adjudicate a null and void decision by the Supreme Law of the Land, a fact for which the injunction will allow time to prepare.

31. A reasonable person -- like PA Supreme Court Justice Dougherty demonstrated when he dissented from the court's majority rule of extending proof beyond the traditional preponderance of the evidence standard -- would not require a plaintiff to provide "conclusive" proof in the face of not only traditional law, but also scientific studies that have raised sufficient significant evidence to require reasonable precaution in preventing <u>any</u> public harm, including but not limited to health;

32. Science can never be finally settled nor owned by "experts" -- it appears corporate profit is the only priority allowed.

33. Equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions that are ultra vires and beyond the scope of their authority or that constitute a violation of their official duty, if the execution of such acts would cause irreparable injury to or destroy the rights and privileges of the complainant, which are cognizable in equity, and for protection of which he would have no adequate remedy at law. **Wilson v. Pulaski Ass'n of Classroom Teachers, 330 Ark. 298, 954 S.W.2d 221, 122 Ed. Law Rep. 334 (1997).**

34. Pennsylvania statutes provide commercial regulations that require a nexus with the commonwealth since the Pennsylvania Constitution limits what a government can regulate.

35. No <u>lawfully-promulgated</u> rules exist and can exist to shut off service at a home for its owner not consenting to a TT meter with probable cause, or at least with prima facie evidence, of unlawfulness and risks violating **PA Title 66 § 1501. *Character of service and facilities*,** <u>until due process is completed</u>.
36. No reasonable, sane person wants to suffer harms and damages.
37. <u>Petitioner has facts and law with essential elements to file claims of violations of federal laws, including but not limited to the Supreme Law of the Land.</u>
38. Forty states offer opt-out options as lawfully required.
39. No public interest that is lawful and substantial will be contravened by the injunction sought since it will protect the public interest from violations of the Rule of Law.
40. **All public interest that is lawful and substantial will be upheld by the injunction sought** since all true Law protects the public interest, beginning in its 1789 establishment at Independence Hall with the writing of the United States Constitution as the Supreme Law of the Land -- written, down the street one block over from Respondent 1's office, by our Founding Fathers whose spirit lives eternally such that the Rule of Law will prevail for Justice and Liberty for all.
41. This injunction will benefit public interest by giving the proper due process to the allegations of violation of federal and state's constitutional, statutory, administrative and commercial laws.
42. An injunction will protect the Petitioner, family, and property from irreparable injuries from the Respondents' planned action in the absence of emergency relief until due process is completed.

WHEREFORE Petitioner moves this Honorable Court to enter an order preventing Respondents and their agents from shutting off Petitioner's electricity due to Respondents forcing a trespassing technology (TT) meter onto the home of the Petitioner who is a responsible customer following Pennsylvania Utility Commission's published guidelines, and

WHEREFORE, Petitioner moves this Honorable Court to enter an order to allow, upon filing of Petitioner's complaint by January 31, 2023 (accounting for the holidays), the adjudication of the Rule of Law to proceed and finish before any installation of a TT meter can occur -- together with such other and further relief as the circumstances and demands of justice may warrant.

Under penalty of perjury, I affirm that the facts alleged in the foregoing are true and correct according to my own personal knowledge.

*Nancy Colbert*,
Petitioner

7

## VERIFICATION

COMMONWEALTH OF PENNSYLVANIA
CHESTER COUNTY

Before me personally appeared Nancy Colbert who, being by me first duly sworn, executed the foregoing in my presence and stated to me under penalty of perjury:

1. My name is Nancy Colbert.
2. I have read and understood the alleged forgoing Petition, and each fact alleged therein are true and correct of my own personal knowledge.

FURTHER THE AFFIANT SAITH NAUGHT.

_____Nancy Colbert_____, Affiant

SWORN TO and subscribed before me this day 29th day of November, 2022.

Notary Public: _Marilyn C Reich_

My commission expires: _2/13/2024_

> Commonwealth of Pennsylvania - Notary Seal
> Marilyn C. Reich, Notary Public
> Chester County
> My commission expires February 13, 2024
> Commission number 1224750
> Member, Pennsylvania Association of Notaries

U.S. POSTAGE PAID
FCM LETTER
PHOENIXVILLE, PA
19460
NOV 29, 22
AMOUNT
$4.84
R2304M113610-0

19106
RDC 99

7022 1410 0001 2542 6059

Clerk of Courts, EDPa
James A. Byrne U.S. Courthouse
Room 2609
601 Market Street
Philadelphia, PA 19106

Colbert
142 Pennsylvania Ave
Phoenixville, PA 19460

RECEIVED
DEC 1 2022